IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

VICTOR JAVIER MARQUEZ,

     Plaintiff,

vs.                                                                    Civ. No. 20-46 KG/SCY

NATIONAL TECHNOLOGY AND ENGINEERING
SOLUTIONS OF SANDIA, LLC,

     Defendant.

<u>MEMORANDUM OPINION AND ORDER</u>

On December 6, 2018, Plaintiff resigned from his position as a Project Manager at

National Technology and Engineering Solutions of Sandia, LLC (Sandia), located on Kirtland

Air Force Base.  Consequently, in August 2019, Plaintiff filed this employment lawsuit in state

court alleging state law claims, including New Mexico Human Rights Act  (NMRHA) claims,

breach of implied or express contract, breach of the covenant of good faith and fair dealing,

constructive discharge, common law retaliation, black listing, false light/defamation, and

negligence.  (Doc. 1-2) at 4-18.  In January 2020, Sandia removed the case to federal court on the

basis of federal question jurisdiction arising from the federal enclave doctrine.  (Doc. 1); *see also*

*Akin v. Ashland Chem. Co.*, 156 F.3d 1030, 1034 (10th Cir. 1998) (noting that cases resulting

from events "occurring within federal enclaves may be removed to federal district court as a part

of federal question jurisdiction").  The Court notes federal question jurisdiction under 28 U.S.C.

§ 1331 and § 1441(a).

After removing the case to federal court, Sandia filed a Motion to Dismiss the entire

complaint.  (Doc. 6).  Plaintiff responded by agreeing to dismiss the NMHRA claims, the breach

of implied contract claim, the constructive discharge claim, the false light claim, and the black

listing claim.  *See* (Doc. 12).  Plaintiff also stated that he intended to seek permission to amend

his complaint to reframe those claims.  Sandia then filed a reply.  (Doc. 13).  The Motion to

Dismiss remains pending.

Plaintiff seeks in the instant Opposed Motion to Amend Complaint (Motion to Amend) to

amend his complaint to bring claims based on Title VII, 42 U.S.C. § 1981, breach of an express

contract, libel and slander, and the Uniformed Services Employment and Reemployment Rights

Act (USERRA).[1]  (Doc. 22).  Plaintiff continues to assert his negligence claim, which the parties

consider in the context of the Motion to Amend.  The Motion to Amend now is fully and timely

briefed.[2]  (Docs. 22, 24, 28, and 29); *see also* (Docs. 23, 25, 26, and 27).  Having considered the

Motion to Amend, the briefing, the proposed Plaintiff's First Amended Complaint (proposed

Amended Complaint), and the controlling law, Court grants the Motion to Amend, in part, as

described below.  In light of the Court's rulings on the Motion to Amend, the Court denies the

Motion to Dismiss as moot.

## I.  The Proposed Amended Complaint

Plaintiff is a disabled veteran and a Catholic.  (Doc. 22-1) at ¶ 8.  In 2017, Sandia hired

Plaintiff as a full-time regular employee in the position of Project Manager.  *Id.* at ¶ 10.  "From

2017 onwards, his immediate supervisor was Sabrina Sanchez."  *Id.*

---

[1] Plaintiff also sought to amend the complaint to add an Americans with Disabilities Act claim,
but he subsequently withdrew that request.  (Doc. 28) at 9.

[2] Sandia claims that when Plaintiff filed his Motion to Amend he did not adhere to Local Rule
7.1(a), which requires a "good-faith concurrence" prior to filing a motion.  The Court, however,
waives compliance with Local Rule 7.1(a) in order to address the merits of the Motion to
Amend, which Sandia, in fact, opposes.  *See* D.N.M. LR-Cv 1.7 (stating that "[t]hese rules may
be waived by a Judge to avoid injustice.").

According to Plaintiff, he reported numerous times to Sanchez and other Sandia managers "under-performing team members" as well as sexual harassment of female co-workers by a male manager.  *Id.* at ¶¶ 13 and 14.  Plaintiff alleges that Sandia subsequently transferred that male manager to another department.  *Id.* at ¶ 14.

Plaintiff also alleges that in October 2018 he told Sanchez that a female co-worker directed "inappropriate comments of a sexual nature" to him.  *Id.* at ¶ 15.  Plaintiff contends that "[a]lthough Sanchez informed [him] that she had addressed the problem, no corrective or disciplinary action was taken with the employee in question" nor did Sanchez transfer the female co-worker to another department.  *Id.*

In addition, Plaintiff alleges that Sanchez told him, "Your military bearing and background are not welcome here."  *Id.* at ¶ 16.  Plaintiff asserts that Sanchez further "attacked" him for "not being 'vulnerable' due to his military background and demeanor."  *Id.*  Plaintiff maintains that Sanchez stated that he would not be considered for a position he had interviewed for "because he was 'too positive' and 'not vulnerable' enough."  *Id.*  Moreover, Plaintiff alleges the he "was shunned, common courtesies were not observed, [and] others refused to cooperate on routine project matters."  *Id.*  Plaintiff claims that his "email to the SANDIA Director requesting career guidance" precipitated Sanchez's comments about his military background and an accusation of insubordination.  *Id.*

Next, Plaintiff alleges that Sanchez "criticized and mocked" Plaintiff's religion.  *Id.* at ¶ 18.  Plaintiff specifically contends that when he explained to Sanchez "that his positive attitude was central to living his faith … Sanchez sarcastically replied, 'Well then, God bless you.'"  *Id.*

Plaintiff further alleges that "Sanchez treated [him] differently than his Anglo male counterparts with regard to job assignments, managerial support, ability to telecommute, job

3

opportunities, and resources available to do his job." *Id.* at ¶ 19.  In fact, Plaintiff "requested a transfer to another organization within Sandia—to no avail." *Id.* at ¶ 21.

On October 2, 2018, Plaintiff made an appointment with the Sandia National Laboratory Medical Center for "extreme abdominal pain and nausea." *Id.* at ¶ 60.  According to Plaintiff, "Sandia National Laboratory Medical Center staff led [him] to believe that he was suffering from a tumor or cancer and that immediate surgery may be required." *Id.* at ¶ 61.  Plaintiff alleges that "[a] follow-up appointment on October 11, 2018 and a second set of x-rays revealed that the original diagnosis was inaccurate." *Id.* at ¶ 62.  Plaintiff contends that the original misdiagnosis caused him to suffer "extreme emotional distress." *Id.*

On December 5, 2018, Sanchez and a Sandia Human Resources representative presented Plaintiff with a Performance Expectations Memorandum. *Id.* at ¶ 22.  The "meeting was held in a glass-walled conference room, in full view of [Plaintiff's] co-workers." *Id.*  The Performance Expectations Memorandum indicated that Plaintiff was "not meeting behavioral expectations as a Project Manager, struggling in building and sustaining effective relationships with customers, failing to resolve interpersonal challenges, and failing to successfully negotiate and meet customer expectations." *Id.*  The Performance Expectations Memorandum also laid out a plan for "success" including that Plaintiff meet with Sanchez once a week to report on various items. *Id.* at ¶¶ 23 and 24.  Plaintiff alleges that "when presented with the Performance Expectations Memorandum, Sandia management emphasized that it was not punitive and not disciplinary." *Id.* at ¶ 54.

Plaintiff resigned from his position the next day, December 6, 2018. *Id.* at ¶ 26.  Plaintiff alleges that Sandia "created and maintained a hostile environment objectively and subjectively intolerable to [Plaintiff] and reasonable persons similarly situated, ultimately causing [Plaintiff]

to resign employment from Sandia." *Id.* at ¶ 50.  Plaintiff contends that Sandia's acts and

omissions which caused him to resign included:

> having no future under his present management and employment area, having no escape
> to other sections of Sandia despite [his] efforts to do so, Sandia's failure to act on claims
> of harassment and discrimination, failure to accommodate [his] medical conditions,
> shunning and failure to provide management support, initiation of a Performance
> Expectations Memorandum based on unsubstantiated facts and allegations, and being
> inconsistent with endorsement for management position.

*Id.* ¶ 50.

Lastly, Plaintiff alleges that Sandia falsely stated that Plaintiff "resigned in lieu of

termination—leading prospective employers to believe that [his] performance at

Sandia was questionable and inadequate."  *Id.* at ¶ 55.

Plaintiff seeks various damages including for "emotional distress evidenced in part by

loss of sleep, shame, humiliation, embarrassment, stress, painful stomach ailments, and anxiety–

–some of which he has been able to manage with over-the-counter medications."  *Id.* at ¶ 28.

Plaintiff maintains that his doctor diagnosed his "gastrointestinal problems as stress-related."  *Id.*

Plaintiff brings seven counts in the proposed Amended Complaint.  In Count I, Plaintiff

alleges that Sandia violated Title VII by discriminating against him on the basis of sex, religion,

and national origin.  In Count II, Plaintiff alleges that Sandia violated Section 1981 by

discriminating against him on the basis of race.  In Count III, Plaintiff alleges Sandia breached an

express employment contract by failing to comply with several policies and procedures.  In

Count IV, Plaintiff alleges that Sandia engaged in retaliation and "constructive retaliatory

discharge" in violation of Title VII.  In Count V, Plaintiff alleges that Sandia made libelous and

slanderous statements when it falsely stated that Plaintiff resigned to avoid termination.  In

Count VI, Plaintiff alleges that Sandia committed negligence by making a medical misdiagnosis.

Finally, in Count VII, Plaintiff alleges that Sandia violated USERRA by discriminating against him on the basis of his military service.

Sandia opposes the Motion to Amend in its entirety by arguing that it would be futile to grant the Motion to Amend. To support that futility argument, Sandia contends that Counts I through VII of the proposed Amended Complaint are subject to dismissal for failure to state claims under Fed. R. Civ. P. 12(b)(6).

## II. Standard of Review

Under Fed. R. Civ. P. 15(a)(2), "a party may amend its pleadings only with the opposing party's written consent or the court's leave." Moreover, Rule 15(a)(2) makes explicit that "[t]he court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). The purpose of Rule 15(a)(2) is to provide litigants "the maximum opportunity for each claim to be decided on its merits rather than on procedural niceties." *Hardin v. Manitowoc-Forsythe Corp*., 691 F.2d 449, 456 (10th Cir. 1982). "Refusing leave to amend is generally only justified upon a showing of undue delay, undue prejudice to the opposing party, bad faith or dilatory motive, failure to cure deficiencies by amendments previously allowed, or futility of amendment." *Frank v. U.S. West, Inc.*, 3 F.3d 1357, 1365-66 (10th Cir. 1993) (citations omitted).

"A proposed amendment is futile if the complaint, as amended, would be subject to dismissal." *Gohier v. Enright*, 186 F.3d 1216, 1218 (10th Cir. 1999). Indeed, "[t]he futility question is functionally equivalent to the question whether a complaint may be dismissed for failure to state a claim" under Rule 12(b)(6). *See id.*

Rule 12(b)(6) requires that a complaint set forth the grounds of a plaintiff's entitlement to relief through more than "labels and conclusions" and "a formulaic recitation of the elements of a cause of action." *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). While a

complaint does not need to include detailed factual allegations, "factual allegations must be enough to raise a right to relief above the speculative level...." *Id.* "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Emps.' Ret. Sys. of R.I. v. Williams Cos., Inc.,* 889 F.3d 1153, 1161 (10th Cir. 2018) (quoting *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Free Speech v. Fed. Election Comm'n*, 720 F.3d 788, 792 (10th Cir. 2013) (quoting *Iqbal*, 556 U.S. at 678). In making this assessment, courts view "well-pleaded factual allegations in a complaint … in the light most favorable to the plaintiff." *Schrock v. Wyeth, Inc.*, 727 F.3d 1273, 1280 (10th Cir. 2013) (quoting *Kerber v. Qwest Grp. Life Ins. Plan*, 647 F.3d 950, 959 (10th Cir. 2011)).

Finally, "when conducting futility analysis on a motion to amend, courts are 'generally confined the four corners of the complaint' and 'cannot rely on outside evidence the parties may introduce.'" *Laurora v. Bayer HealthCare LLC*, 2018 WL 3586272, at *5 n. 2 (D.N.J.) (quoting *Tri3 Enterprises, LLC v. Aetna, Inc.*, 535 Fed. Appx. 192, 195 (3d Cir. 2013)). Accordingly, the Court will not "consider any factual assertions discussed in Plaintiff's briefing" which he did not explicitly allege in the proposed Amended Complaint. *See id.*

III. Discussion

Following the above analysis for deciding a motion to amend and the associated futility issue, the Court will focus on whether Plaintiff has pled plausible claims under Rule 12(b)(6).

A. Count I:  Title VII Discrimination

To establish inferential Title VII discrimination under the *McDonnell Douglas* framework, a plaintiff must first

> establish a prima facie case of discrimination. Second, if the plaintiff carries his initial
> burden, the burden shifts to the defendant to "articulate some legitimate
> nondiscriminatory reason" for the challenged workplace decision. Third, if the defendant
> carries this burden, the plaintiff has an opportunity to prove that the legitimate reasons
> the defendant offered were merely a pretext for discrimination.

*Notari v. Denver Water Dep't*, 971 F.2d 585, 588 (10th Cir. 1992).  Typically, a plaintiff must

show the following to establish a *prima facie* case of Title VII discrimination: "(1) she 'belongs

to a protected class'; (2) she 'suffered an adverse employment action'; and (3) 'the challenged

action took place under circumstances giving rise to an inference of discrimination.'" *Kenfield v.

Colorado Dep't of Pub. Health & Env't*, 557 Fed. Appx. 728, 731 (10th Cir. 2014) (quoting

*EEOC v. PVNF, L.L.C.,* 487 F.3d 790, 800 (10th Cir. 2007)).

In a Rule 12(b)(6) context, "'an employment discrimination plaintiff need not plead a

prima facie case of discrimination' to survive a motion to dismiss." *Johnston v. Hunter Douglas

Window Fashions, Inc.*, 715 Fed. Appx. 827, 830 (10th Cir. 2017) (quoting *Swierkiewicz v.

Sorema N.A.*, 534 U.S. 506, 515 (2002)).  "While the 12(b)(6) standard does not require that [a

p]laintiff establish a [Title VII] *prima facie* case in her complaint," the elements of an alleged

Title VII "cause of action help to determine whether [a p]laintiff has set forth a plausible claim."

*Khalik v. United Air Lines,* 671 F.3d 1188, 1192 (10th Cir. 2012).  "Thus, to evaluate whether [a]

complaint survives a motion to dismiss, absent direct evidence of discrimination, [the Court]

examine[s] the first step of the *McDonnell Douglas* framework: the elements [a plaintiff] would

need to establish to prove a prima-facie case." *Morman v. Campbell Cty. Mem'l Hosp.*, 632 Fed.

Appx. 927, 933 (10th Cir. 2015).  In *Morman*, the Tenth Circuit held that this framework "is the

only way to assess if [a plaintiff's] claim[s] [are], in fact, plausible." *Id.*

Here, Sandia argues that Plaintiff's receipt of the Performance Expectations

Memorandum does not rise to the level of an adverse employment action, the second *prima facie*

element of a Title VII discrimination cause of action.  Plaintiff asserts, on the other hand, that the

adverse employment action occurred when "Sanchez treated [him] differently than his Anglo

male counterparts with regard to job assignments, managerial support, ability to telecommute,

job opportunities, and resources available to do his job."[3] (Doc. 28) at 2 (quoting (Doc. 22-1) at ¶

19).

> The Tenth Circuit explained the scope of an adverse employment action as follows:
>
> An adverse employment action includes acts that "'constitute [ ] a significant change in
> employment status, such as hiring, firing, failing to promote, reassignment with
> significantly different responsibilities, or a decision causing a significant change in
> benefits.'"  In our recent decision of *Hillig v. Rumsfeld,* 381 F.3d 1028, 1033 (10th Cir.
> 2004), however, we expressly held that an adverse employment action is not limited to
> such acts.  Rather, we liberally interpret the second prong of the prima facie case and take
> a case-by-case approach, examining the "'unique factors relevant to the situation at
> hand.'"  Nevertheless, "we will not consider 'a mere inconvenience or an alteration of job
> responsibilities' to be an adverse employment action."

*Dick v. Phone Directories Co.*, 397 F.3d 1256, 1268 (10th Cir. 2005) (citations omitted).  Even if

the Court accepts Plaintiff's allegation that Sanchez treated Plaintiff differently than his Anglo

male counterparts with respect to job assignments, managerial support, ability to telecommute,

job opportunities, and availability of resources as true and views it in the light most favorable to

Plaintiff, the Court cannot reasonably infer from that allegation that Sanchez's actions

significantly changed Plaintiff's employment status.  In other words, Plaintiff has not alleged

facts to show that Sanchez's alleged actions led to a demotion, failure to promote, loss of pay, or

any significant change in benefits.  Without more specific factual allegations describing, for

instance, the job assignments Sanchez denied Plaintiff, the kind of managerial support Sanchez

withheld from Plaintiff, and what job opportunities and resources Sanchez denied Plaintiff, the

---

[3] The Court notes that Plaintiff does not argue in his reply that he suffered an adverse
employment action as a result of sex or religious discrimination, forms of discrimination Plaintiff
raises in Count I of the proposed Amended Complaint.

Court cannot reasonably infer from Plaintiff's allegation that unique factors exist that establish an adverse employment action or that Sanchez's actions constituted more than "mere inconvenience[s] or an alteration of job responsibilities." *See Dick*, 397 F.3d at 1268 (citation omitted). Moreover, that lack of specificity violates Fed. R. Civ. P. 8(a)(2) by not giving Sandia "fair notice" of the specific "grounds" supporting the allegation that Sanchez treated Plaintiff differently than his Anglo male counterparts. *See Bell Atlantic Corp.*, 550 U.S. at 555 (citation omitted). Finally, the Court cannot reasonably infer from Plaintiff's allegations that Sanchez's denial of his request to telecommute constituted more than a "mere inconvenience." *See Dick*, 397 F.3d at 1268 (citation omitted). For the above reasons, the Court concludes that Plaintiff has failed to state a plausible Title VII *prima facie* case and, thus, the Title VII discrimination claims are subject to a Rule 12(b)(6) dismissal. Consequently, the Court denies the Motion to Amend with regard to Count I of the proposed Amended Complaint on the grounds of futility.

### B. Count II: Section 1981 Race Discrimination

The Court notes that the elements for a race discrimination claim are the same under both Section 1981 and Title VII. *See Payan v. United Parcel Serv.*, 905 F.3d 1162, 1168 (10th Cir. 2018) (stating that "[i]n racial discrimination suits, the elements of a plaintiff's case are the same whether that case is brought under §§ 1981 or 1983 or Title VII") (citation omitted). Hence, the same reasoning for denying the Motion to Amend as to the Title VII discrimination claims applies with respect to the Section 1981 race discrimination claim brought in Count II of the proposed Amended Complaint.

### C. Count III: Breach of Express Employment Contract

To decide whether Plaintiff has stated a plausible claim for breach of an express employment contract, a state law claim, the Court must first consider the impact of the federal

enclave doctrine on that claim.  Under the federal enclave doctrine, "state law that is adopted after the creation of the enclave generally does not apply on the enclave." *Allison v. Boeing Laser Tech. Servs.*, 689 F.3d 1234, 1235 (10th Cir. 2012).  Only state law existing at the time of the creation of the federal enclave "remains enforceable." *Id.* at 1237 (citation omitted).  In this case, Kirtland Air Force Base, where Plaintiff worked for Sandia, was established as a federal enclave in 1954.  *Id.* at 1235 (stating that "Kirtland Air Force Base, a federal enclave" was established in 1954).

The parties agree that "New Mexico did not recognize an implied contract for employment arising from an employment manual until 1980." *Allison*, 689 F.3d at 1243. Moreover, the parties do not contest that in 1954 New Mexico recognized a cause of action based on a breach of an express contract for employment.

Sandia argues, however, that Plaintiff's alleged breach of an "express" employment contract is really an allegation of a breach of an "implied" employment contract, which the federal enclave doctrine bars.  Sandia asserts that Count III of the proposed Amended Complaint "is devoid of any allegations that Plaintiff was under written contract for a specific term of employment under specific conditions." (Doc. 24) at 11.  Instead, Sandia maintains that Plaintiff was an at-will employee.

Plaintiff argues that "[a]t issue is whether Sandia's published express policies and procedures which contractually bind the company, its managers and all employees as terms and condition of employment constitute an express contract as pled by Plaintiff…." (Doc. 28) at 3. Plaintiff concedes that "[i]f necessary [he] requests he be allowed to amend his complaint to more fully identify the specific express contractual provisions at issue and to provide more

detailed factual allegations concerning the breach … or, to proceed on the merits in related discovery." *Id.* at 4.

New Mexico courts have held that an employee handbook, for instance, can constitute an express employment contract if it contains "specific contractual terms which might evidence the intent to form a contract." *Sanchez v. The New Mexican*, 1987-NMSC-059, ¶ 12, 106 N.M. 76. Non-promissory language or a mere "declaration of defendant's general approach to the subject matter discussed" do not evidence an intent to form an express employment contract. *Id.* Nonetheless, an express employment contract or agreement can incorporate policies and procedures if it explicitly provides that it is subject to those policies and procedures. *See McGinnis v. Honeywell, Inc.*, 1990-NMSC-043, ¶ 10, 110 N.M. 1 (finding express employment contract when plaintiff signed "employment agreement which, while it provided that her employment could be terminated 'at any time,' also provided that termination was subject to 'applicable personnel practices published to employees'").

Here, as Plaintiff appears to admit, he fails to allege any specific contractual terms in a handbook or in some kind of employment agreement from which the Court can reasonably infer that an express employment contract existed that incorporated the policies and procedures which Plaintiff asserts Sandia breached.  Considering the speculative nature of Plaintiff's allegations regarding an express employment contract, Plaintiff fails to state a plausible claim for breach of an express employment contract which can survive a Rule 12(b)(6) motion.  The Court, therefore, denies the Motion to Amend as to Count III of the proposed Amended Complaint based on futility.

Furthermore, given that the Motion to Amend pertains to the proposed Amended Complaint attached to the Motion to Amend, the Court denies Plaintiff's request to amend the

proposed Amended Complaint to add further factual allegations.  The Court also denies

Plaintiff's request to conduct discovery on a claim that is subject to a Rule 12(b)(6) dismissal.

Even so, considering that the Court will grant the Motion to Amend, in part, *see infra*, the

Federal Rules of Civil Procedure do not prohibit Plaintiff from filing a motion to file a second

amended complaint with a revised, and presumably plausible, Count III.  Following that motion

practice will permit Sandia an opportunity to either consent to a revised Count III or to oppose a

revised Count III.

> D.  *Count IV:  Title VII Retaliation and Constructive Retaliatory Discharge*

The heading for Count IV of the proposed Amended Complaint states in relevant part:

"RETALIATION; CONTRUCTIVE RETALIATORY DISCHARGE [TITLE VII …]."  (Doc.

22-1) at 11. The Court, however, notes that Plaintiff does not allege facts to support a Title VII

retaliation claim.  *See Bennett v. Windstream Commc'ns, Inc*., 792 F.3d 1261, 1269 (10th Cir.

2015) (stating that Title VII retaliation occurs when employee opposes "any practice made

unlawful by Title VII, or who has 'participated in any manner in an investigation, proceeding, or

hearing under this subchapter'") (citation omitted).  Rather, Plaintiff alleges that Sandia's

"hostile environment [was] objectively and subjectively intolerable to [Plaintiff] and reasonable

persons similarly situated, ultimately causing [Plaintiff] to resign employment from Sandia."

(Doc. 22-1) at ¶ 50.  Plaintiff then alleges that various acts and omissions by Sandia caused him

to resign.

*See id.*  Plaintiff also contends in his reply that "having allegedly brought to the attention of

management other observations and disclosures relating to workplace behavior implicating the

efficiency of national security programs [FAC ¶ 13 a-e] to no avail, Plaintiff may be found by the

jury to have had no choice to resign."  (Doc. 28) at 4.  Considering those allegations as true and

in the light most favorable to Plaintiff, the Court finds that Plaintiff brings only a Title VII constructive discharge claim in Count IV, regardless of the Count IV heading.  *See Bell Atlantic Corp.*, 550 U.S. at 555 (holding that Rule 12(b)(6) requires that complaint set forth grounds of relief through more than "labels and conclusions").

"Constructive discharge occurs when the employer by its illegal discriminatory acts has made working conditions so difficult that a reasonable person in the employee's position would feel compelled to resign."  *Sanchez v. Denver Pub. Sch.,* 164 F.3d 527, 534 (10th Cir. 1998) (citation omitted). "The question is not whether working conditions at the facility were difficult or unpleasant."  *Exum v. U.S. Olympic Comm.*, 389 F.3d 1130, 1135 (10th Cir. 2004) (citation omitted).  To establish a constructive discharge claim, a plaintiff must show that "she had no other choice but to quit."  *Sandoval v. City of Boulder, Colo.,* 388 F.3d 1312, 1325 (10th Cir. 2004).

To decide if working conditions support a construction discharge claim, courts apply an objective standard: "The conditions of employment must be objectively intolerable; the plaintiff's subjective views of the situation are irrelevant." *Sanchez,* 164 F.3d at 534.  "And if an employee resigns of his 'own free will, even as a result of the employer's actions, that employee will not be held to have been constructively discharged.'"  *Sampson v. Kane Is Able, Inc.*, 812 Fed. Appx. 746, 750 (10th Cir. 2020) (citation omitted).  Put another way, a "[p]laintiff must show that, at the time of his resignation, his employer did not allow him the opportunity to make a free choice regarding his employment relationship."  *Exum,* 389 F.3d at1135; *see also Lighton v. Univ. of Utah,* 209 F.3d 1213, 1222 (10th Cir. 2000) (finding that plaintiff "must show he had 'no other choice but to quit'").  "As courts have noted, '[a]n employee who quits without giving his employer a reasonable chance to work out a problem has not been constructively discharged.'"

*Grube v. Lau Indus., Inc.*, 257 F.3d 723, 728 (7th Cir. 2001) (citing, *inter alia*, *Yearous v. Niobrara County Mem'l Hosp.,* 128 F.3d 1351, 1356 (10th Cir. 1997)).

Sandia argues that Plaintiff does not allege a plausible constructive discharge claim because he voluntarily resigned from Sandia.  Plaintiff asserts that he alleges facts that show he had no choice but to resign.  Although Plaintiff alleges facts that demonstrate that Sandia created a difficult and unpleasant work environment that was "subjectively intolerable" to Plaintiff, Plaintiff's subjective perception of the work environment does not state a plausible constructive discharge claim.  *See* (Doc. 22-1) at ¶ 50.  Even viewing Plaintiff's allegations as true and in his favor, the Court cannot reasonably infer from those allegations that Plaintiff did not resign of his own free will.  Instead of resigning the day after he received the Performance Expectations Memorandum, Plaintiff could have chosen to comply with the Performance Expectations Memorandum and given Sandia an opportunity to address his concerns.  *See, e.g., Exum*, 389 F.3d at 1136 (holding that record does not demonstrate "objectively involuntary" resignation when "[i]nstead of resigning, Plaintiff could have chosen to comply with his superior's order or, alternatively, refused to comply and faced the possible consequences of that choice").  Notably, Plaintiff alleges that "when presented with the Performance Expectations Memorandum, Sandia management emphasized that it was not punitive and not disciplinary."  (Doc. 22-1) at ¶ 54. Plaintiff's allegations do not show that he had "no other choice but to quit."  *See Lighton,* 209 F.3d at 1222.  As such, the allegations fail to demonstrate that Plaintiff's conditions of employment were objectively intolerable.  The Court, therefore, concludes that Plaintiff has failed to state a plausible Title VII constructive discharge claim.  Accordingly, the Title VII constructive discharge claim is subject to a Rule 12(b)(6) dismissal.  Hence, the Court denies the Motion to Amend as to Count IV of the proposed Amended Complaint on the basis of futility.

E.  *Count V:  Libel and Slander*

Sandia argues that the federal enclave doctrine bars Plaintiff's libel and slander claims. Sandia also contends that New Mexico has not recognized libel and slander causes of action since 1970 when New Mexico adopted the definition of defamation.  Alternatively, Sandia argues that Count V does not state a plausible claim for relief.  Plaintiff asserts that he has alleged plausible libel and slander claims based on New Mexico law as it existed in 1954.

The parties agree that one could bring libel and slander claims under New Mexico law in 1954.  That the New Mexico Supreme Court abolished the distinction between libel and slander in 1970 does not change the fact that libel and slander claims remain viable causes of action under the federal enclave doctrine as it applies to Kirtland Air Force Base.  "[E]ven though state law will not remain static outside the enclave, any changes made to the state law applicable within the enclave must be a matter of federal law."  *Allison*, 689 F.3d at 1237.  In this case, Sandia has not presented any evidence that Congress has abolished libel and slander causes of action with respect to incidents occurring on Kirtland Air Force Base.  *See id.* (noting that "[b]ecause 'future statutes of the state are not a part of the body of laws in the ceded area,' 'Congressional action is necessary to keep [state law] current.'" (quoting *James Stewart & Co. v. Sadrakula,* 309 U.S. 94, 100 (1940)).

Sandia also asserts that Count V does not state a plausible claim for relief because

Plaintiff makes the conclusory allegation that, "On the basis of information and belief, Sandia has intentionally and wrongfully provided prospective employers of Marquez with derogatory and false information regarding Marquez's employment at Sandia—stating that Marquez resigned in lieu of termination—leading prospective employers to believe that Marquez's performance at Sandia was questionable and inadequate."

(Doc. 24) at 13 (quoting (Doc. 22-1) at ¶ 55).  Sandia maintains that Plaintiff does not
specifically allege "to whom the allegedly defamatory information was published or whether or
how Plaintiff was injured…." *Id.*

Although Plaintiff alleges in the proposed Amended Complaint that he "has suffered
damages of type and amount subject to proof at trial" as a "result of Sandia's dissemination of
false information to prospective employers," Plaintiff, nonetheless, requests that the Court allow
him "to proceed with discovery at Sandia to determine how this false data was disclosed to
prospective employers."  (Doc. 28) at 6; (Doc. 22-1) at ¶ 57.  Even accepting Plaintiff's
allegation that Sandia falsely stated that Plaintiff resigned to avoid termination as true and in
Plaintiff's favor, Plaintiff violates Rule 8(a)(2) by not giving Sandia "fair notice" of the specific
"grounds" supporting that allegation, including how Sandia allegedly disclosed this false
information to prospective employers, which prospective employers received the false
information, and how that false information harmed Plaintiff.  *See Bell Atlantic Corp.*, 550 U.S.
at 555 (citation omitted).  Given this lack of specificity, and the conclusory and speculative
nature of Plaintiff's allegations regarding the libel and slander claims, Plaintiff fails to state
plausible libel and slander claims.  For this reason, the libel and slander claims are subject to a
Rule 12(b)(6) dismissal.  The Court, therefore, denies the Motion to Amend as to Count V of the
proposed Amended Complaint on the grounds of futility.

*F.  Count VI:  Negligence Claim*

Sandia argues that Plaintiff cannot state a claim for negligence "because the only
damages he alleges in connection with that claim are for emotional distress which are not
recognized in New Mexico."  (Doc. 24) at 15.  Sandia maintains that "the emotional distress
damages claimed by Plaintiff … bear no relation to the claims where New Mexico courts have

17

permitted recovery for emotional distress damages without a physical injury." *Id.* Sandia cites *Akutagawa v. Laflin, Pick & Heer, P.A.*, in which the New Mexico of Appeals reiterated that "[g]enerally speaking, damages for emotional distress in ordinary negligence actions are not permitted in New Mexico." 2005-NMCA-132, ¶ 21, 138 N.M. 774. In fact, New Mexico "courts have limited the availability of damages for emotional distress." *Castillo v. City of Las Vegas*, 2008-NMCA-141, ¶ 22, 145 N.M. 205. For example, emotional distress "damages are available for plaintiffs who prevail on a claim for negligent or intentional infliction of emotional distress." *Id.* "In addition, compensation for emotional distress is permitted when a plaintiff establishes loss of consortium, intentional misconduct, defamation, or a physical injury." *Id.* (emphasis added).

Plaintiff, however, contends that in *Curry v. Journal Pub. Co*., a 1937 case, the New Mexico Supreme Court "found that *negligently conveyed information* could form the basis of a claim for emotional distress caused to the specific recipient to whom a duty was owed to ensure the accuracy of such information." (Doc. 28) at 8. In *Curry*, a newspaper falsely published a report that Governor George Curry had died. 1937-NMSC-023, ¶ 1, 41 N.M. 318, *partially overruled by Ramirez v. Armstrong,* 1983-NMSC-104, ¶ 6, 100 N.M. 538. That false news allegedly caused Governor Curry's son and daughter-in-law to suffer emotional distress which caused physical injury. *Id.* Consequently, Governor Curry's son and daughter-in-law sued the newspaper for damages. *Id.* "In that opinion, the Court held that negligently spoken or written words do not constitute a cause of action for emotional distress." *Ramirez,* 1983-NMSC-104 at ¶ 6. In addition, "by way of dicta, the Court indicated that a family member who witnessed the negligent killing or serious injury of another member of the family had no cause of action against the tortfeasor based on negligent infliction of emotional distress." *Id.* (expressly overruling dicta

and holding that cause of action exists for negligent infliction of emotional distress to bystanders).

Although *Curry* is factually distinct from this case and its holding does not apply to this case, Plaintiff cites to the part of the *Curry* opinion wherein the New Mexico Supreme Court stated that "[t]he wrong was done to Governor Curry, not his relations or friends" and "[t]hat emotional distress may follow from acts of negligence…." *Curry*, 1937-NMSC-023 at ¶ 28. Considering the context of the case, those two comments do not establish that in 1954 New Mexico recognized that one could recover stand-alone emotional distress damages when neither the negligent act nor the emotional distress caused a physical injury.

The New Mexico Supreme Court in *Curry*, on the other hand, cited with approval Wisconsin cases in discussing the right of a bystander to recover damages.  In that discussion, the New Mexico Supreme Court observed that "[t]he Wisconsin courts hold to the doctrine that recovery may in a proper case be had solely for the physical consequences of fright, without physical injury from impact…." *Id.* at ¶ 25.  The Court infers from that observation that in 1954 New Mexico courts would have allowed for the recovery of emotional distress damages when at least the emotional distress resulted in a physical consequence, regardless of whether the negligent act itself caused a physical injury.  Such a recovery would be in accord with *Akutagawa* and *Castillo*.

In fact, Plaintiff alleges that Sandia's "wrongful conduct" caused "emotional distress evidenced in part by loss of sleep" and stress-related "painful stomach ailments."  (Doc. 22-1) at ¶ 28.  Viewing that allegation as true and in the light most favorable to Plaintiff, the Court can reasonably infer from that allegation that the negligence (misdiagnosis) caused emotional distress resulting in a physical injury ("loss of sleep" and "painful stomach ailments").  Hence,

Plaintiff has stated a plausible negligence claim not subject to a Rule 12(b)(6) dismissal.  For the above reasons, the Court grants Plaintiff's request to file an amended the complaint that continues to include his negligence claim.

    *G.  Count VII:  USERRA Discrimination*

    To prove discrimination under USERRA, plaintiffs must make out a *prima facie* case in which they demonstrate "that their military membership constituted 'a motivating factor' in" employers taking adverse employment actions.  *Greer v. City of Wichita, Kansas*, 943 F.3d 1320, 1323 (10th Cir. 2019) (quoting 38 U.S.C. § 4311(c)(1)).  "If an aggrieved employee shows that military membership is one of the reasons for" the adverse employment action, "the employer may invoke the 'same action defense.'"  *Id.* (citing 38 U.S.C. § 4311 (c)(1)).  "Under this defense, the employer must prove that it would have taken the same action even if the employee had not been in the military."  *Id.*

    To establish a *prima facie* case under USERRA, a plaintiff must show that the employer "harbored anti-military animus" and that the anti-military animus "constituted a factor motivating" the employer to take an adverse employment action.  *Id.* at 1324.  "Anti-military animus can be proven through negative statements about an employee's military status."  *Id.* Anti-military animus "constitute[s] a motivating factor if it influenced" the employer's decision to take an adverse employment action.  *Id.* at 1325.  "The existence of other innocent motivations [is] not … fatal."  *Id.*

    Sandia argues that "Plaintiff fails to allege an adverse employment action sufficient to support a claim for relief under USERRA."  (Doc. 24) at 11.  Sandia contends that Plaintiff's "conclusory allegation that Sandia was 'motivated in whole or in part due to his veteran status and took adverse employment actions against [Plaintiff],' is simply insufficient."  (Doc. 24) at 11

(quoting (Doc. 22-1) at ¶ 66).  Sandia, however, neglects to mention that Plaintiff alleges that

Sanchez stated, "Your military bearing and background are not welcome here."  (Doc. 22-1) at ¶

16.  Plaintiff also alleges that Sanchez "attacked" Plaintiff for "not being 'vulnerable' due to his

military background and demeanor."  *Id.*  These allegations, if viewed as true and in Plaintiff's

favor, suggest that Sanchez harbored an anti-military animus.

Plaintiff also alleges that Sanchez stated that Plaintiff "would not be considered for the

position for which he had interviewed because he was 'too positive' and 'not vulnerable'

enough."  *Id.*  Viewing this allegation as true and in Plaintiff's favor, the Court can reasonably

infer from that allegation that Sanchez was motivated, at least in part, by an anti-military animus

when she declined to consider Plaintiff for a position for which he had interviewed, an adverse

employment action.  In sum, the Court concludes that Plaintiff has plausibly stated a *prima facie*

USERRA discrimination case which survives a Rule 12(b)(6) motion.  The Court, thus, grants

the Motion to Amend to add an USERRA discrimination claim.

*IV.  Conclusion*

The Court grants the Motion to Amend only to the extent that Plaintiff may file an

amended complaint to bring his negligence and USERRA discrimination claims.  The Court

denies the Motion to Dismiss with respect to Plaintiff's other claims because it would be futile

for Plaintiff to bring claims subject to dismissal under Rule 12(b)(6).  Considering the Court's

rulings on the Motion to Amend, the Court denies the Motion to Dismiss as moot.

IT IS ORDERED that

1.  the Opposed Motion to Amend Complaint (Doc. 22) is granted, in part, in that

Plaintiff may file an amended complaint consistent with this Memorandum and Opinion no later

than 14 days from the date of entry of this Memorandum Opinion and Order; and

2.  the Motion to Dismiss (Doc. 6) is denied as moot.

UNITED STATES DISTRICT JUDGE